# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| **JUAN DUENES  #1865465** | § | |
| | § | |
| **V.** | § | **A-17-CV-0726 -LY** |
| | § | |
| **DALE WAINWRIGHT, et al.** | § | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

TO:   THE HONORABLE LEE YEAKEL
      UNITED STATES DISTRICT JUDGE

The Magistrate Judge submits this Report and Recommendation to the District Court pursuant to 28 U.S.C. § 636(b) and Rule 1(f) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas.  Duenes is pro se and was granted leave to proceed *in forma pauperis*. Before the Court is Duenes's Complaint (Docket Entry "DE" 1).

## STATEMENT OF THE CASE

At the time he filed his complaint pursuant to 42 U.S.C. § 1983, Juan Duenes was confined in the Boyd Unit of the Texas Department of Criminal Justice ("TDCJ"). Named as Defendants are Dale Wainwright, as Chairman of the Texas Board of Criminal Justice; Bryan Collier, TDCJ Executive Director; Debbie Liles, Director of TDCJ's Administrative Review & Risk Management Divison; Cynthia Tilley, Senior Warden of the Boyd Unit; and "any successors in office." Duenes alleges that Defendants, "acting under color of law either in their official capacities and or individual capacities," have engaged in a civil conspiracy to violate Duenes's federal constitutional rights. Duenes alleges his First Amendment rights and his right to access the courts have been violated by unconstitutional procedures and policies, and he is subjected to unconstitutional conditions of confinement in violation of his Eighth Amendment rights. Duenes further alleges he has been

retaliated against for asserting the deprivation of his constitutional rights. He seeks declaratory and injunctive relief for his claims against Defendants in their official capacities and an award of punitive damages and attorneys' fees.

## DISCUSSION AND ANALYSIS

### A.     Review under 28 U.S.C. §§ 1915 & 1915A

Duenes's claims must be screened pursuant to 28 U.S.C. § 1915A. Under § 1915A, if a complaint is frivolous, malicious, or fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief, the Court must dismiss the complaint, or any portion of the complaint,. *Martin v. Scott*, 156 F.3d 578 (5th Cir. 1998). When reviewing the complaint under § 1915A, a court must construe the allegations liberally. *Haines v. Kerner*, 404 U.S. 519 (1972). However, a plaintiff's pro se status does not offer him "an impenetrable shield, for one acting pro se has no license to harass others, clog the judicial machinery with meritless litigation and abuse already overloaded court dockets." *Farguson v. MBank Houston, N.A.*, 808 F.2d 358, 359 (5th Cir. 1986).

### B.     Duenes's claims[1]

#### 1.     Civil conspiracy

Duenes asserts Defendants participated in a civil conspiracy to violate his constitutional rights, acting under color of law "either in their official capacities and or individual capacities." (DE 1 at 4). Construed broadly, Duenes's first claim for relief alleges Defendants conspired to deny him the constitutional rights delineated in his other claims for relief. To support a federal civil rights

---

[1]Because Duenes only seeks injunctive and declaratory relief from Defendants there are no Eleventh Amendment issues raised by his claims.

conspiracy claim, a plaintiff must allege facts that suggest an agreement between government actors to commit an illegal act and an actual deprivation of the plaintiff's constitutional rights. *Kerr v. Lyford*, 171 F.3d 330, 340 (5th Cir. 1999); *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994). "Mere conclusory allegations of conspiracy cannot, absent reference to material facts, constitute grounds" for relief. *Dayse v. Schuldt*, 894 F.2d 170, 173 (5th Cir. 1990). *See also Lynch v. Cannatella*, 810 F.2d 1363, 1370 (5th Cir. 1987) (recognizing that "[b]ald allegations that a conspiracy existed are insufficient" to state a claim for relief).

Section 1983 suits may be instituted to sue a state employee using or abusing power possessed by virtue of state law, to violate a person's constitutional rights. *Monroe v. Pape*, 365 U.S. 167, 184 (1961); *Brown v. Miller*, 631 F.2d 408, 410-11 (5th Cir. 1980). A § 1983 plaintiff must show an abuse of government power that rises to a constitutional level in order to state a cognizable claim. *Love v. King*, 784 F.2d 708, 712 (5th Cir. 1986); *Williams v. Kelley*, 624 F.2d 695, 697 (5th Cir. 1980). Endorsing improper acts of others does not make an individual liable for violating a person's constitutional rights. *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983).

None of Duenes's claims for relief assert the denial of a federal constitutional right by Defendants acting in concert or otherwise. Duenes's Complaint only makes conclusory allegations of a conspiracy, which are insufficient to state a claim for civil conspiracy. *See, e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009); *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). The conspiracy claim is therefore frivolous and should be dismissed.

### 2. First Amendment

Duenes asserts that, beginning in April of 2016, Defendants published and began to enforce a systemwide procedure prohibiting inmates from maintaining active social media accounts for the

purposes of soliciting, updating, or engaging others, through a third party or otherwise. (DE 1 at 5). Duenes argues "all inmates have a federal constitutional right to legitimate free speech through direct or third party social media accounts." *Id.* Duenes asserts he has a right to participate in social media for the purpose of seeking employment and housing upon his release from prison, to communicate with family members and friends, to conduct legal research, to communicate with organizations established to promote prison reform, and to expose the fraudulent expenditure of taxpayer moneys or abuses of state executive branch power "giving rise to unconstitutional conditions of confinement." *Id.* Duenes contends there is no legitimate state purpose for the prohibition on social media, because the prohibition "interferes with actual and meaningful rehabilitation and reduction of recidivism." (DE 1 at 6). Duenes further argues he has a "constitutional right" to possess a laptop computer with an unlimited Internet service connection, for the purpose of accessing websites containing state and federal case law. Duenes argues such access would allow him to pursue a career and would "deter recidivism," and further asserts "at least one or more TDCJ inmates have already acquired laptop computers for legal research with internet/program connectivity in their personal possession in-cell housing areas." (DE 1 at 10).

In *Stauffer v. Gearhart*, the Fifth Circuit explained the impact of imprisonment on one's civil rights:

> Prisoners do not lose all constitutional rights once they pass beyond prison walls, but they retain only those First Amendment rights which are not inconsistent with their status as prisoners or with the legitimate penological objectives of the prison system. *See Turner v. Safley,* 482 U.S. 78, 84 (1987); *see also Hudson v. Palmer,* 468 U.S. 517, 523 (1984). Because courts are "'ill equipped' to deal with the difficult and delicate problems of prison management, [the Supreme Court] has afforded considerable deference to the determinations of prison administrators." *Thornburgh v. Abbott,* 490 U.S. 401, 407-08 (1988). "[P]rison administrators . . . , and not the courts, [are] to make the difficult judgments concerning institutional operations." *Id.*

at 409 (quoting *Turner,* 482 U.S. at 89). Furthermore, "prison officials may well conclude that certain proposed interactions, though seemingly innocuous to laymen, have potentially significant implications for the order and security of the prison." *Id.* at 407. Based on these considerations, the Supreme Court has rejected a "heightened" scrutiny standard for regulations that are "centrally concerned with the maintenance of order and security within prisons" and instead applies a reasonableness standard. *Id.* at 409-10. A prison regulation that "impinges on inmates' constitutional rights . . . is valid if it is reasonably related to legitimate penological interests." *Turner,* 482 U.S. at 88.

741 F.3d 574, 584 (5th Cir. 2014).

The federal courts that have considered the issue of a right to use a computer have reasoned that, because prisoners have no federal constitutional right to possess a typewriter, they logically do not have a constitutional right to a computer. *Taylor v. Coughlin*, 29 F.3d 39, 40 (2d Cir. 1994); *Sands v. Lewis*, 886 F.2d 1166, 1169 (9th Cir. 1989); *American Inmate Paralegal Assoc. v. Cline*, 859 F.2d 59, 61 (8th Cir. 1988) ("Prison inmates have no constitutional right of access to a typewriter."); *Lehn v. Hartwig*, 13 F. App'x 389, 392 (7th Cir. 2001) (holding, in a section 1983 action, "If prisoners have no constitutional right to a typewriter, they certainly do not have one to a computer"). *See also Robinson v. Joya*, 2010 WL 1779885, at *3 (E.D. Cal. 2010) (stating, in a section 1983 action, "No court has found that prisoners have a constitutional right to possess personal computers, or items that are similar to personal computers, in their cells."). State inmates do not have a federal constitutional right to possess computers or to access the Internet.[2]

---

[2] In an unpublished case a Washington District Court reasoned:

Here, the "critical question" is whether the prison's practice of impeding prisoner access to Facebook "is reasonably related to legitimate penological interests." *Solan*, 530 F. App'x at 110-11 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). The Supreme Court in *Turner* established a "reasonableness" test to determine whether a prison policy violates inmates' constitutional rights . . . .

Evaluating the *Turner* factors above, first, there is a valid, rational

Duenes's claim that he must be allowed to possess a computer to further his rehabilitation is also unavailing—the United States Constitution does not afford prison inmates a protected right to educational or rehabilitative programs or services. *Beck v. Lynaugh*, 842 F.2d 759, 762 (5th Cir. 1988); *Stewart v. Winter*, 669 F.2d 328, 336 n.19 (5th Cir. 1982). *Cf. Bulger v. United States Bureau of Prisons*, 65 F.3d 48, 49 (5th Cir. 1995) (finding no federal constitutional right to participate in an education or rehabilitative program while incarcerated).

Duenes therefore fails to state a claim that his constitutional rights were violated by the enactment and implementation of a policy that prohibits his possession of a computer and access to social media.

### 3. Access to the courts

Duenes alleges: "In 2013 then-chairman Oliver Bell issued an order with then-TDCJ executive director Debbie Liles (or her predecessor)" to "begin the gradual permanent removal of the most vital state and federal law books and legal research materials from all prison law libraries" with "the intent to interfere with inmate attempts to timely file challenges to [the] legality of [their]

---

connection between the prison's practice of indirectly cutting off inmates' access to this social media platform and security of the prison and protection of the public. Second, there are multiple alternative means for inmates to communicate with the public, including in-person visits, telephone calls, postal mail, and emails. Third, permitting inmates to communicate via third party agents on Facebook would require incredible prison resources to monitor such communications for unauthorized contacts. Fourth, [plaintiff] has offered no meaningful alternatives to the arrangement, which weighs in favor of the prison's informal policy. Therefore, using the *Turner* analysis, the policy in question did not violate Duenes's constitutional rights. *See Solan*, 530 F. App'x at 110.

*Spicer v. Richards*, 2008 WL 3540182, at *7-*8 (W.D. Wash. Aug.11, 2008) (holding ban on possession of electronic devices did not violate detainee's substantive due process rights).

confinement and or conditions of [their] confinement in state or federal courts." (DE 1 at 6). Duenes further alleges: "Defendant Wainwright, including defendants Collier and Liles and Tilley," have and continue to wilfully and wrongfully participate to prevent access to relevant federal case citations, "of which the defendants have the power to rescind or overturn as unconstitutional, but will not." *Id.* Specifically, Duenes asserts Defendants:

1. encourage prison law librarians and inmate staff to "use discretion in destroying valid I-60 requests to visit a law library;"

2. arbitrarily limit inmates from access to more than three state or federal citations per day– Duenes alleges that, prior to March 2013, inmates had "virtually unlimited access" to case citations and did not have to seek permission to obtain and review such materials;

3. arbitrarily require all inmates to submit an I-60 request to obtain materials unavailable at the prison law library, which requests are then screened by Defendant Liles' staff for discretionary approval or denial;

4. arbitrarily deny "most" I-60 requests, "if it appears to the agents of defendant Liles or Liles herself that any case citation would effectively aid any inmate in federal litigation against TBCJ or TDCJ agents and contracted agents of UTMB Hospital employees;"[3]

5. arbitrarily deny Duenes from having his step-1 grievances filed and processed, including those against Liles and Tilley alleging these defendants have denied meaningful access to courts in habeas and 1983 claims. Duenes asserts the denial of legal materials has resulted in "hundreds or thousands of state and federal habeas corpus cases and § 1983 cases to be dismissed or denied."

(DE 1 at 8).

---

[3] Duenes lists the following specific cases he alleges Defendants have refused to make available: *Hamdan v. Rumsfeld*, *Garcetti v. Caballas*, *Peckingham v. North Carolina*, *People ex rel. Green v. Superintendent of Sullivan Correctional Facility*, *Burton v. Owens*, *Peoples v. Annucci*, *Jones v Cunningham*, *Tate v. Short*, and *Texas v. Freeman*. (DE 1 at 8).

Duenes further alleges "TBCJ Policy No. BP-03.81 (revised 4/20/12)" requires law librarians to prohibit inmates from discussing legal matters in the library, unless they agree to be censored by the law librarian, and also argues the "I-60" procedure is unconstitutional because the law librarian and/or her inmate staff fail or refuse to honor requests and thereby prevent him from access to the law library. (DE 1 at 9). Duenes contends he should not have to submit any I-60 requests, and that his access to federal case law is limited to one or two hours "or less." *Id.* Additionally, Duenes asserts the "Thin-Line" procedure authorized by Defendants is unconstitutional because the procedure was designed to limit inmate access to state and federal legal opinions. (DE 1 at 9).

Prisoners have a constitutionally protected right of access to the courts. *Lewis v. Casey*, 518 U.S. 343, 360 (1996), *citing Bounds v. Smith*, 430 U.S. 817 (1977). The State must furnish indigent inmates with pen and paper to draft legal documents, stamps to mail them, and adequate opportunity to conduct legal research through access to adequate law libraries or access to "persons trained in the law," or other persons who can provide legal assistance. *Bounds*, 430 U.S. at 824-28. However, prison officials have considerable discretion in how they meet these obligations. *Lewis*, 518 U.S. at 356. The right of access to the court is not unlimited, and includes only a reasonable opportunity to file non-frivolous legal claims challenging the prisoners' convictions or conditions of confinement. *Id.* at 351. "While the precise contours of a prisoner's right of access to the courts remain somewhat obscure, the Supreme Court has not extended this right to encompass more than the ability of an inmate to prepare and transmit a necessary legal document to a court." *Brewer v. Wilkinson*, 3 F.3d 816, 821 (5th Cir. 1993). *See also Norton v. Dimazana*, 122 F.3d 286, 290 (5th Cir. 1997); *Eason v. Thaler*, 73 F.3d 1322, 1329 (5th Cir. 1996). Accordingly, limiting a prisoner's access to a law library and to legal materials does not violate their right of access to the courts. *Jones*

*v. Greninger*, 188 F.3d 322, 325-26 (5th Cir. 1999) (holding the right provides a reasonable opportunity to file nonfrivolous legal claims challenging convictions or conditions of confinement and that limiting access to the law library to five hours per week as a result of the prisoner's job reassignment did not violate his right to access the courts).

Moreover, to adequately state a claim for relief for violation of his right to access the courts, Duenes must demonstrate an actual injury stemming from the allegedly unconstitutional conduct. *Lewis*, 518 U.S. at 351-54; *Chriceol v. Phillips*, 169 F.3d 313, 317 (5th Cir. 1999). Without a showing of an actual injury, Duenes lacks standing to pursue a claim of denial of access to the courts. *Lewis*, 518 U.S. at 349. This requirement, that a claimant show "actual injury," is "not satisfied by just any type of frustrated legal claim." *Id.* at 354. "Actual injury" is "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Id.* at 348. The Constitution only requires that prisoners be able to present their grievances to the courts and, therefore, neither frivolous filings nor secondary litigation activity, such as legal research and writing that does not involve preparation of lawsuits challenging the inmate's own conviction or the conditions of his confinement, may form the basis for a claim. The impairment of such litigation activity is simply one of the incidental and perfectly constitutional consequences of conviction and incarceration. *Johnson v. Rodriguez*, 110 F.3d 299, 311 (5th Cir. 1997). The Supreme Court has held that the right of access to the courts "does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims." *Lewis*, 518 U.S. at 355.

Duenes does not allege that he was unable to bring a non-frivolous challenge to his conviction, and as this lawsuit demonstrates Duenes has, clearly, been able to file a complaint

9

challenging the conditions of his confinement. Accordingly, Duenes has failed to state a cognizable claim that Defendants have violated his right to access the courts by means of a policy limiting his rights to access the law library or specific legal opinions.

### 4. Conditions of confinement

Duenes contends the prison is overcrowded, violating his "equal right to single-cell housing." (DE 1 at 11). Duenes argues he has a constitutional right to rehabilitation which is violated by being forced to occupy a cell with another inmate, and asserts he is compelled "to constantly smell the intense pungent bodily odors of urine and feces and gases of another inmate in double-inmate cell housing." (DE 1 at 12). Duenes further argues if he were not subjected to prison over-crowding, his mental stress would be reduced and inmates would be less disrespectful to TDCJ and TBCJ personnel. *Id.* Duenes asserts he is compelled to climb stairs to a second floor cell even though this puts Duenes at "high risk of sustaining serious physical injury . . . from slip and fall accidents," and that this constitutes cruel and unusual punishment. (DE 1 at 13). Duenes asserts he is "starved or under-fed daily" because the "Governor and Defendants (all four) have ordered or participate in reducing the prison costs by reducing the amount and quality of food." *Id.*

Duenes further contends the Boyd Unit is a "ghetto prison unit" because Defendants refuse to replace or repair windows and screens, refuse to utilize inmate labor to apply reflective paint to cool the units, refuse to diminish body-heating by not co-housing inmates, refuse to paint rusted areas in cells and the indoor dayroom recreational areas, and refuse to ensure the ratio of one Correctional Officer ("CO") to ten inmates, a ratio he alleges is "mandated by federal law." (DE 1 at 14). Duenes further alleges over-crowding "requir[es] inmates to physically fight or kill one of the other as a direct result of improper cell housing assignments by Defendants." *Id.* He also asserts

10

COs are given a quota to write "at least 30 punitive disciplinary rule violations against any inmate during their 4–day shift." (DE 1 at 15).

To state a claim of unconstitutional conditions of confinement, a plaintiff must allege an objectively "sufficiently serious" deprivation that results in the denial of "the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The Fifth Circuit has explained: "While the Constitution does not require that custodial inmates be housed in comfortable prisons, the Eighth Amendment's prohibition against cruel and unusual punishment does require that prisoners be afforded 'humane conditions of confinement' and prison officials are to ensure that inmates receive adequate food, shelter, clothing, and medical care." *Herman v. Holiday*, 238 F.3d 660, 664 (5th Cir. 2001). *See also Gates v. Cook*, 376 F.3d 323, 332 (5th Cir. 2004). Pursuant to the Supreme Court's decision in *Sandin v. Conner*, the Court must determine whether the challenged condition amounts to a significant and atypical hardship on the inmate in relation to the ordinary incidents of prison life. 515 U.S. 472, 484 (1995). To state an Eighth Amendment claim, the Supreme Court requires a plaintiff meet two requirements:

> First, the deprivation alleged must be, objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities. Second, "a prison official must have a sufficiently culpable state of mind. In prison conditions cases, that state of mind is one of deliberate indifference to inmate health or safety. To establish deliberate indifference . . . the prisoner must show that the defendants (1) were aware of facts from which an inference of an excessive risk to the prisoner's health or safety could be drawn and (2) that they actually drew an inference that such potential for harm existed.

*Palmer v. Johnson*, 193 F.3d 346, 352 (5th Cir. 1999) (internal quotations and citations omitted). A plaintiff must also allege how he was personally injured by the alleged unconstitutional conditions. *Lewis*, 518 U.S. at 349.

### a. Insufficient food

Duenes alleges:

> The ongoing result of Defendants' unconstitutional deliberate creation of over-population of prisoners which exceeds the capacity not authorized under federal mandated established law in Texas, is subjecting the Duenes-Class to be starved or under-fed daily because the current Texas [Governor] and Defendants WAINWRIGHT and COLLIER and LILES and TILLEY have ordered or are actively participating together to reduce prison budget costs by reducing the amount of food and the quality of food served to prisoners daily, where the Duenes and others must rely on outside money donations to purchase food from the TDCJ prison commissary to prevent starvation or significant weight loss because the Defendants will not provide adequate portions of humanely prepared food each day.

(DE 1 at 13).

"To comply with the Constitution, inmates must receive 'reasonably adequate' food." *Eason*, 73 F.3d at 1327. "The deprivation of food constitutes cruel and unusual punishment only if it denies a prisoner the 'minimal civilized measure of life's necessities.'" *Talib v. Gilley*, 138 F.3d 211, 214 n.3 (5th Cir. 1998), *quoting Wilson v. Seiter*, 501 U.S. 294, 298 (1991). "Whether the deprivation of food falls below this threshold depends on the amount and duration of the deprivation." *Id.*

Duenes has not pleaded sufficient facts to state a claim that he has been deprived of adequate nutrition. *See id.* at 214 n.3 ("Missing a mere one out of every nine meals is hardly more than that missed by many working citizens over the same period."); *Green v. Ferrell*, 801 F.2d 765, 770-71 (5th Cir. 1986) (finding that the provision of only two nutritionally adequate meals daily does not violate the Eighth Amendment). In *Talib*, the Fifth Circuit expressed doubt that an inmate who showed that he had missed 50 meals in five months, resulting in the loss of 15 pounds, "was denied anything close to a civilized measure of life's necessities." 138 F.3d at 214 n.3. Duenes' allegations

fail to meet this threshold. He does not claim that he was undernourished or that he lost an unhealthy amount of weight as a result of Defendants' alleged reduction of the amount and quality of food provided to Duenes. Because Duenes offers only conclusory allegations that his prison diet is inadequate, he fails to state a claim for relief.

### b. Housing conditions

Duenes alleges Defendants have refused to replace or repair missing or damaged windows or window screens, refused to have inmates apply reflective pain on exterior walls to reduce heat "from approximately 130 degrees to approximately 100 degrees," refused to "reduce body heat by 50% by placing each inmate in a single cell," and refused to paint "rusted areas inside each cell and indoor dayroom recreational areas." (DE 1 at 14).

Even construed broadly, Duenes has failed to state a claim that his housing violates his Eighth Amendment rights. An allegation that Duenes is uncomfortable cannot support a finding that the Duenes was subjected to cruel and unusual punishment in violation of the Eighth Amendment. *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995). The Constitution "'does not mandate comfortable prisons.'" *Palmer v. Johnson*, 193 F.3d 346, 351 (5th Cir. 1999), *quoting Rhodes*, 452 U.S. at 349. Extreme deprivations are required to make out a conditions-of-confinement claim. *Hudson v. McMillan*, 503 U.S. 1, 9 (1992). Because routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. *Id.* at 8.[4]

---

[4]     "The Eighth Amendment does not outlaw cruel and unusual 'conditions';
it outlaws cruel and unusual 'punishments.'" Accordingly, "an official's
failure to alleviate a significant risk that he should have perceived but did

Although the Fifth Circuit has found violations of the Eighth Amendment in some situations, the prison conditions in those cases were clearly more deplorable than those alleged by Duenes. *See Palmer*, 193 F.3d at 354 (finding Eighth Amendment violation where inmates were herded into a small outdoor space, deprived of protection from excessive cold and wind, and provided no sanitary means of disposing of their waste). *Compare Davis v. Scott*, 157 F.3d 1003, 1006 (5th Cir. 1998) (finding no Eighth Amendment violation where inmate was kept in filthy cell for only three days and was given cleaning supplies). "[A] common thread that runs through" all of the cases wherein the Fifth Circuit has found violations of the Eighth Amendment with regard to the conditions of confinement is "the deprivation of basic elements of hygiene." *Novak v. Beto*, 453 F.2d 661, 665 (5th Cir. 1971). To state an Eighth Amendment claim, a plaintiff must objectively describe conditions "so serious as to deprive prisoners of the minimal measure of life's necessities, as when it denies the prisoner some basic human need." *Harper v. Showers*, 174 F.3d 716, 720 (5th Cir. 1999).

Duenes has not alleged sufficient specific facts showing that any defendant disregarded an excessive risk to his safety by failing to replace or repair window screens or paint the exterior or interior of the prison. Alleging a risk that Duenes might slip and fall as a result of his housing conditions is insufficient to state a claim pursuant to section 1983. *See McLaughlin v. Farries*, 122 F. App'x 692, 693, 2004 WL 2030365 (5th Cir.) (rejecting a claim that the defendants knew of and failed to clean up a leaky air conditioner, resulting in a slip and fall in accumulated water); *Benton*

---

not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment."

*Williams v. Hampton*, 797 F.3d 276, 280-81 (5th Cir. 2015).

*v. Grant*, 31 F. App'x 160, 2001 WL 1751477, at *1 (5th Cir.) (denying relief in a case wherein the Duenes complained that jail officials "knew about the leak in the ceiling but failed to repair it," resulting in a slip-and-fall injury, holding that "at most, Benton alleges a claim of negligence, which is not actionable under 42 U.S.C. § 1983.").

### c. Overcrowding and understaffing

Duenes alleges that, as a result of prison over-crowding and double-bunking, inmates are "requir[ed] to physically fight or kill one of the other as a direct result of improper cell housing assignments by Defendants' Unit Classification supervisors and or clerks, where physical violence is condoned by the defendant Tilley and authorized by the other Defendants . . ." (DE 1 at 14). Duenes alleges he is "in constant imminent danger of sustaining serious physical injury by constantly being subjected" to being housed with "an assortment of mentally deranged and criminally dangerous inmates, where in the past he had to physically defend himself and obtained physical injuries, as a direct result of improper cell housing by the defendant Tilley," because "Defendants could have or should have made viable efforts to prevent all improper housing assignments." (DE 1 at 15). Petitioner alleges there are "2 to 3 correctional officers total for a constant average of 240 inmates housed in a single housing building, thus making inmate and officer safety extremely dangerous." (DE 1 at 14).

Petitioner's claim that his federal constitutional rights are violated by double-bunking inmates does not state a claim for relief. The federal courts have consistently rejected "some sort of 'one man, one cell' principle lurking in the Due Process Clause of the Fifth Amendment." *Rhodes*, 452 U.S. at 348. In *Rhodes*, the Supreme Court held that the constitution did not forbid the housing of two inmates in cells that comprised sixty-three (63) square feet. *Id.* at 40-41. *See also*

*Duncan v. Puckett*, 91 F.3d 137, 1996 WL 400039, at *1 (5th Cir.) (upholding the dismissal, as frivolous, of an inmate's claim that being placed "in a single cell with another inmate" violated his civil rights). Neither the number of inmates in one cell nor the amount of space provided for an inmate determines whether the inmate's confinement is cruel and unusual. *Ruiz v. Estelle*, 679 F.2d 1115, 1146 (5th Cir.), *amended in part, vacated in part*, 688 F.2d 266 (5th Cir. 1982).

To state an actionable understaffing claim, the plaintiff must demonstrate that the staffing is the result of an official policy, promulgated or enforced by Defendants, to deprive the prisoner of his civil rights. *Hinojosa v. Johnson*, 277 F. App'x 370, 2008 WL 1924216 (5th Cir. 2008) *citing Mouille v. City of Live Oak*, 977 F.2d 924, 929 (5th Cir. 1992). *See also, Hazel v. Bell*, 2010 WL 1038733 (E.D. Tex.); *Hood v. Itawamba*, 819 F. Supp. 556, 566 (N.D. Miss. 1993); *Gagne v. City of Galveston*, 671 F. Supp. 1130, 1135 (S.D. Tex. 1987). *Accord Doe v. Sullivan Cnty., Tenn.*, 956 F.2d 545, 550 (6th Cir. 1992) (evidence of overcrowding or shortage of jailers does not sustain Duenes's burden in a failure-to-protect case); *Morgan v. Cabana*, 2009 WL 1066294, at *1-*2 (S.D. Miss) (general allegations that defendant jail officials failed to protect the Duenes because the jail was over-crowded and the facility was under-staffed, creating conditions that made an attack by other inmates more likely, did not state a constitutional claim for deliberate indifference to the Duenes's safety).

Duenes fails to allege overcrowding sufficient to establish a viable section 1983 claim. Instead, as with his other claims, Duenes makes only conclusory statements, in this instance alleging that overcrowding and understaffing results in decreased inmate safety. Further, he fails to allege facts indicating that any overcrowding is the result of a policy intended to create that situation.

### d. Classification

Duenes alleges:

15. Duenes has recently discovered that there are approximately 35,000 inmates in TDCJ prisons systemwide whom have lawfully completed serving their felony sentences but remain "in custody of TDCJ" illegally pursuant to unconstitutional procedures used by **Defs** TDCJ classification agents of the Texas **BOARD** OF Criminal Justice (TBCJ) Defendant-members.

16. In regards to claim #15 above; the ongoing unconstitutional <u>procedure</u> wilfully and wrongfully authorized and used by the Defendants and their TDCJ classification agents [is the intentional unconstitutional retroactive application of Texas Government Code Sections 508.149[5] and 508.283(b)[6] to felony offenses occurring <u>before</u> the enactment and effective dates of said codes] for the underlying purpose of unconstitutionally increasing the original sentence maximum expiration dates by wilfully and wrongfully and illegally falsifying TDCJ-ID inmate classification records of the Duenes-Class without due process and without access to courts to obtain an adequate legal remedy.

(DE 1 at 10-11) (emphasis in original). Duenes alleges the "ongoing unconstitutional procedures arbitrarily" create an atypical and significant hardship, because these procedures deny him the right to "single-cell housing," and that he "chronically suffers constant intense physical pain" because he is, but has not been classified as, a "chronic care patient." (DE 1 at 11-12). Duenes alleges the

---

[5]Section 508.149 amended the relevant sentencing statute, making mandatory supervised release discretionary in circumstance in which it formerly had been automatic.

[6]Section 508.283(b) provides:

(b) If the parole, mandatory supervision, or conditional pardon of a person described by Section 508.149(a) is revoked, the person may be required to serve the remaining portion of the sentence on which the person was released. The remaining portion is computed without credit for the time from the date of the person's release to the date of revocation.

Tex. Gov't Code § 508.283. "Section 508.149 altered the [mandatory supervised release] provisions only for offenders who were convicted after September 1, 1996." *McCall v. Dretke*, 390 F.3d 358, 364 (5th Cir. 2004).

improper classification expresses "Defendants' intent to create full capacity at each and every prison unit." (DE 1 at 12).

"'It is well settled that '[p]rison officials must have broad discretion, free from judicial intervention, in classifying prisoners in terms of their custodial status.'" *McCord v. Maggio*, 910 F.2d 1248, 1250 (5th Cir. 1990), *quoting Wilkerson v. Maggio*, 703 F.2d 909 (5th Cir. 1983). A prison inmate does not have a protectable liberty or property interest in his custodial classification and thus has no right to be housed in a particular facility or be assigned a particular job. *Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995); *Moody v. Baker*, 857 F.2d 256, 257-58 (5th Cir. 1988). Duenes has no liberty interest in his classification status with regard to his unit or his cell assignment. He does not allege that he has been assaulted by any inmates with whom he was celled; he says only that they smell bad. Neither does Duenes allege that he is himself being held beyond the expiration of his sentence. Duenes has not shown a constitutional violation with regard to this alleged policy and his claim on this point is without merit.

###### e. Disciplinary citation "quotas"

Duenes alleges "Defendants have an ongoing unconstitutional procedure which imposes against TDCJ correctional officers to perform a quota to write at least 30 punitive disciplinary rule violations against any inmate during their 4-day shift, including the requirement to write false disciplinary reports of prison rule violations . . . to meet the said quota." (DE 1 at 15).

To the extent Duenes claims Defendants enacted a policy requiring COs to issue a certain number of disciplinary citations, even if Duenes's complaint can be read to assert this policy resulted in a false disciplinary report against him, his claim fails. Duenes has no right which protects him

from being charged with a disciplinary offense. This is true regardless of the truth of the initial report. *Freeman v. Rideout*, 808 F.2d 949, 952 (2nd Cir. 1986); *Hanrahan v. Lane*, 747 F.2d 1137, 1140-41 (7th Cir. 1984). Accordingly, this claim is not cognizable, because Duenes has no constitutional protection from being wrongly charged with a disciplinary offense. In *Woods v. Smith*, 60 F.3d 1161, 1164-65, n.16 (5th Cir. 1995), the Fifth Circuit found a prisoner must show a favorable termination of disciplinary procedures prior to bringing a section 1983 claim based simply on the filing of a false disciplinary charge, absent an allegation of retaliatory interference with the exercise of a constitutional right. This requirement was reaffirmed by the Supreme Court in *Edwards v. Balisok*, 520 U.S. 641, 648 (1997). Because Duenes has not alleged the violation of his constitutional rights, this claim is frivolous and must be dismissed.

### 5. Retaliation

Duenes alleges "Defendants have and continue to deliberately cause mental and physical punishment to Duenes" as retaliation for his actions, including deeming him fit to perform "extraordinary field-labor." (DE 1 at 12). Duenes further alleges "Defendant Tilley reasonably knew or should have known that participation in the civil conspiracy resulting in Duenes performing field labor would cause him physical pain and suffering" in retaliation for Duenes's "repeated attempts to seek completion of all his step-1 grievances for filing the instant civil rights complaint." (DE 1 at 13).

It is well-established that prison officials may not retaliate against an inmate because that inmate exercised a right guaranteed to him under the Constitution. *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995) (1996). To state a claim of retaliation, a prisoner must allege facts which

establish that: (1) he exercised a specific constitutional right; (2) the defendant had the intent to retaliate against him for his exercise of that right; (3) a retaliatory adverse act occurred; and (4) causation. *Bibbs v. Early*, 541 F.3d 267, 270 (5th Cir. 2008). Causation requires a showing that "but for the retaliatory motive the complained of incident . . . would not have occurred." *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997), *quoting Woods*, 60 F.3d at 1166. "The inmate must allege more than his personal belief that he is the victim of retaliation," and *"*must produce direct evidence of motivation or, the more probable scenario, allege a chronology of events from which retaliation may plausibly be inferred." *Jones*, 188 F.3d at 324-25, *quoting Woods*, 60 F.3d at 1166.

Though allowing inmate retaliation claims under § 1983 "ensure[s] that prisoners are not unduly discouraged from exercising their constitutional rights," *Morris v. Powell*, 449 F.3d 682, 686 (5th Cir. 2006), the Fifth Circuit has also cautioned that trial courts must carefully scrutinize these claims, *Woods*, 60 F.3d at 1166. For this reason, "mere conclusory allegations of retaliation," or a prisoner's own beliefs, are insufficient to establish retaliation. *Id.* Even assuming all of the facts as pled by Duenes are true, he has failed to allege a constitutional violation. The transfer of a prisoner from one job to another is not a "retaliatory adverse act" sufficient to support a claim for retaliation. *Morris*, 449 F.3d at 686-87.

## **RECOMMENDATION**

It therefore **RECOMMENDED** that Duenes's complaint be **DISMISSED WITH PREJUDICE** as frivolous pursuant to 28 U.S.C. § 1915(e). It is further recommended that the Court include within its judgment a provision expressly and specifically warning Duenes that filing or pursuing any further frivolous lawsuits may result in (a) the imposition of court costs pursuant to

Section 1915(f); (b) the imposition of significant monetary sanctions pursuant to FED. R. CIV. P. 11; (c) the imposition of an order barring Duenes from filing any lawsuits in this Court without first obtaining the permission from a District Judge of this Court or a Circuit Judge of the Fifth Circuit; or (d) the imposition of an order imposing some combination of these sanctions.

It is further **RECOMMENDED** that Duenes should be warned that for causes of action which accrue after June 8, 1995, the Texas Department of Criminal Justice, upon receipt of a final order of a state or federal court that dismisses as frivolous or malicious a lawsuit brought by an inmate while the inmate was in the custody of the Department or confined in county jail awaiting transfer to the Department following conviction of a felony or revocation of community supervision, parole, or mandatory supervision, is authorized to forfeit (1) 60 days of an inmate's accrued good conduct time, if the Department has previously received one final order; (2) 120 days of an inmate's accrued good conduct time, if the Department has previously received two final orders; or (3) 180 days of an inmate's accrued good conduct time, if the Department has previously received three or more final orders. TEX. GOV'T CODE ANN. § 498.0045.

It is further **RECOMMENDED** that Duenes be warned that if Duenes files more than three actions or appeals while he is a prisoner which are dismissed as frivolous or malicious or for failure to state a claim on which relief may be granted, then he will be prohibited from bringing any other actions in forma pauperis unless he is in imminent danger of serious physical injury. 28 U.S.C. § 1915(g).

Finally, in the event this Report and Recommendation is accepted, adopted or approved, it is **RECOMMENDED** that the Court direct the Clerk to e-mail a copy of its order and judgment to the TDCJ - Office of the General Counsel and the keeper of the three-strikes list.

## OBJECTIONS

Within 14 days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636 (b)(1)(C). Failure to file written objections to the proposed findings and recommendations contained within this report within 14 days after service shall bar an aggrieved party from de novo review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415 (5th Cir. 1996)(en banc); *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276-277 (5th Cir. 1988).

SIGNED this 7th day of December, 2017.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE